1
2
3
4
5
6
7
8        IN THE UNITED STATES DISTRICT COURT FOR THE

9                 EASTERN DISTRICT OF CALIFORNIA

10

11   DEANNA RANGEL,                    )    1:09-cv-01467-AWI-BAM
                                       )
12              Plaintiff,             )    ORDER RE: MOTION FOR
                                       )    SUMMARY JUDGMENT OR
13        v.                           )    PARTIAL SUMMARY
                                       )    JUDGMENT IN THE
14   AMERICAN MEDICAL RESPONSE         )    ALTERNATIVE
     WEST; JOSE MARTINEZ; and          )
15   TRACY J. FISHER,                  )    (Doc. 58)
                                       )
16              Defendants.            )
     _____ )

17

18                          I. INTRODUCTION

19

20

21   Defendant Jose Martinez (hereinafter referred to as "Martinez") has filed a motion for summary

22   judgment or partial summary judgment (i.e., summary adjudication) in the alternative pursuant to

23   Federal Rule of Civil Procedure 56.  For reasons discussed below, the motion for summary judgment

24   shall be denied.  Summary adjudication shall be granted for Martinez as to the third and fifth causes

25   of action for defamation and sexual battery, respectively; summary adjudication shall be denied as

26   to second cause of action for violation of the California Fair Employment and Housing Act.

27

28

1

## II. FACTS AND PROCEDURAL BACKGROUND

2

3   The Court refers the parties to previous orders for a chronology of the proceedings.  On January 21,

4   2010, plaintiff Deanna Rangel (hereinafter "Plaintiff" or "Rangel") filed her first amended complaint

5   against American Medical Response West ("AMR"), Tracy J. Fischer (sued as Tracy J. Fisher) and

6   Martinez, asserting causes of action for (1) violation of Title VII of the Civil Rights Act of 1964 as

7   amended, 42 U.S.C. § 2000e et seq. (against AMR), (2) violation of the California Fair Employment

8   and Housing Act (FEHA), California Government Code § 12900 et seq. (against AMR and

9   Martinez), (3) defamation – slander per se (against AMR and Fischer), (4) wrongful discharge in

10  violation of public policy (against AMR) and (5) sexual battery in violation of California Civil Code

11  § 1708.5 (against AMR and Martinez).  In the first amended complaint, Rangel alleged as follows:

12
13      "Plaintiff is a female who was sexually harassed, defamed and retaliated against by
        Defendant employer, American Medical Response West . . . and Defendants Jose
        Martinez . . . and Tracy J. Fisher [sic] . . . , supervisors for AMR and Plaintiff's
14      supervisors, creating a hostile work environment and quid pro quo harassment, in
        Tulare County, California, at the time of the acts giving rise to this action."

15  Rangel further alleged:

16      "Defendant, AMR, was an employer at all times relevant herein, and is a California
17      corporation, qualified and doing business in the State of California, and has
        continuously had and does now have at least fifteen employees.  Defendant, AMR,
18      is an enterprise engaged in commerce within the meaning of 42 U.S.C. § 2000e(b).
        [¶] At all times relevant herein Defendants, Martinez and Fisher [sic], were
19      employees, agents and supervisors of Defendant, AMR, within the meaning of
        California Government Code § 12926(r)."

20  Rangel further alleged:

21      "On or about November 6, 2008, Plaintiff filed charges of discrimination and
        harassment with the U.S. Equal Employment Opportunity Commission (hereinafter
22      referred to as 'EEOC') and California Department of Fair Employment and Housing
        (hereinafter referred to as 'DFEH') against Defendant, AMR, alleging discrimination,
23      sex harassment, and retaliation . . . . [¶] On or about November 6, 2008, Plaintiff
        filed a charges [sic] of discrimination with [DFEH] against Defendants, Martinez and
24      Fisher [sic], alleging discrimination, sex harassment, and retaliation . . . . A copy of
        the DFEH/EEOC charges are attached as Exhibits A and B, hereto."

25  Rangel's DFEH/EEOC complaints, which had been attached to Rangel's original complaint filed

26  August 20, 2009, alleged sex discrimination by AMR and Martinez and further alleged as follows:

27

28                                              2

"On May 5, 2008, I [Rangel] was subjected to a write-up. On August 10, 2008, I was verbal [sic] and visually sexually harassed by Jose Martinez, Paramedic/Supervisor. On August 28, 2008, I was terminated while in the position of EMI 1 earning $14.45 per hour. I was hired on June 25, 2001. [¶] T. J. Fisher [sic], Administrative Supervisor told me I was being written up due to a patient complaint. T. J. Fisher [sic] told me I was being terminated due to misconduct."

Rangel's DFEH/EEOC complaints further alleged:

"I believe I was subjected to a write-up and verbally and visually sexually harassed which is discrimination on the basis of my sex (female) and terminated in retaliation for complaining. My beliefs are based on the following: [¶] A. On May 5, 2008, I was subjected to a write-up due to a patient complaint although non female employees have received patient complaints and are not written up. [¶] B. On August 10, 2008, I was verbally and visually sexually harassed . . . by Jose Martinez Paramedic/Supervisor. The harassment created a hostile work environment. [¶] C. On August 10, 2008, I reported the incident to Brian Perez, Shop Stewart [sic]/Paramedic and nothing was done. [¶] D. On August 28, 2008, I was terminated for misconduct although non female employees are not terminated for misconduct."

On March 4, 2011, Martinez filed his motion for summary judgment or partial summary judgment (i.e., summary adjudication) in the alternative, contending the absence of genuine issues of material fact entitles him to judgment as a matter of law. On March 28, 2011, Rangel filed her opposition to Martinez's motion. Martinez filed his reply to Rangel's opposition on April 4, 2011. On May 18, 2011, the Court issued an order requiring the parties to brief additional issues. Rangel filed her supplemental brief on May 31, 2011; Martinez filed his supplemental brief on June 13, 2011.

### III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

1    *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* Fed. R. Civ.

2    P. 56(c)(1)(A). "Where the non-moving party bears the burden of proof at trial, the moving party

3    need only prove that there is an absence of evidence to support the non-moving party's case." *In re*

4    *Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (2010) (citing *Celotex, supra,* at p. 325). If

5    the moving party meets its initial burden, the burden shifts to the non-moving party to present

6    evidence establishing the existence of a genuine dispute as to any material fact. *See Matsushita Elec.*

7    *Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538. A

8    court ruling on a motion for summary judgment must construe all facts and inferences in the light

9    most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255,

10    106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if the motion is unopposed, the movant is not

11    absolved of the burden to show there are no genuine issues of material fact, *Henry v. Gill Industries,*

12    *Inc.,* 983 F.2d 943, 949-50 (9th Cir. 1993), although the court may assume the movant's assertions

13    of fact to be undisputed for the purposes of the motion and grant summary judgment if the facts and

14    other supporting materials show the movant is entitled to it. *See* Fed. R. Civ. P. 56(e)(2), (3).

15

16                                     **IV. DISCUSSION**

17

18    ***A. Second cause of action (violation of FEHA)*** – Martinez first moves for summary adjudication

19    of Rangel's second cause of action for violation of FEHA, Cal. Gov. Code sections 12900 et seq.

20    Incorporating previous allegations by reference, Rangel alleges as follows under this cause of action:

21         "Plaintiff is informed and believes and thereon alleges a substantial or motivating
           factor in Defendants' discrimination, sexual harassment, and retaliatory termination

22         on or about August 28, 2008, was [Plaintiff's] sex, female, in violation of [FEHA].
           [¶] The behavior, conduct and comments by the Defendants created a work

23         environment that was intimidating, hostile, oppressive and offensive to Plaintiff
           which deprived Plaintiff of the benefit of a discrimination-free work environment,

24         all in violation of California Government Code §§ 12940, et seq. Such conduct on
           the part of Defendant, Martinez, included . . . exposing his genitals to Plaintiff."

25

26    To support her allegations, Rangel relies on her deposition testimony, which establishes the

27    following disputed facts. On August 10, 2008, Rangel, Martinez and Rangel's partner – another

28                                      4

1  AMR employee named Chris Zeigers – were on duty at AMR's Porterville, California, station.  As

2  Rangel and Zeigers were exiting the station, an altercation between Rangel and Martinez ensued,

3  culminating in Rangel's telling Martinez he "didn't have any balls" and Martinez's unzipping his

4  pants and exposing his testicles to Rangel.  According to Rangel, Martinez's testicles were visible

5  for about a second.  Martinez disputes this version of events and contends he never exposed himself

6  to Rangel.  Relying on Title VII authority, Martinez now argues, however, that even assuming the

7  alleged exposure occurred, no genuine issue of material fact exists here because "[t]here is absolutely

8  no evidence which even remotely suggests that [Martinez's] alleged conduct was based on

9  [Rangel's] sex or motivated by sexual desire."  Having reviewed the evidence, the Court disagrees.

10      "A claim for hostile environment sexual harassment exists under [ ] FEHA where the plaintiff

11  was subjected to unwelcome conduct or comments because of his or her sex and the result was

12  harassment so severe or pervasive that the conditions of the plaintiff's employment were altered."

13  *Pantoja v. Anton,* 198 Cal.App.4th 87, 114, 129 Cal.Rptr.3d 384 (2011) (citing *Lyle v. Warner Bros.*

14  *Television Prods.,* 38 Cal.4th 264, 279, 42 Cal.Rptr.3d 2, 132 P.3d 211 (2006)).  "The plaintiff must

15  show that the harassing conduct took place because of the plaintiff's sex, but," contrary to Martinez's

16  contention, "need not show that the conduct was motivated by sexual desire."  *Id.* (citing *Singleton*

17  *v. United States Gypsum Co.,* 140 Cal.App.4th 1547, 1564, 45 Cal.Rptr.3d 597 (2006)).  "For

18  example, a female plaintiff can prevail by showing [ ] the harassment was because of the defendant's

19  bias against women[,] . . . not that it was because of the defendant's sexual interest in women."  *Id.*

20      At her deposition, Rangel testified that on one prior occasion, as she was washing dishes in

21  the Porterville station, Martinez walked up to her, grabbed her hair and started playing with her hair

22  while telling her how beautiful it was.  Rangel further testified there were other times when Martinez

23  would "come by . . . and spank [her] in the ass with a towel."  Based on this evidence, a reasonable

24  trier of fact could conclude Martinez exposed himself to Rangel for his own sexual gratification.

25  Rangel also testified other AMR employees told her Martinez had said Rangel "didn't deserve to be

26  working as an EMT," called her variously a "bitch," "whore," "cochina," "fuckin' worthless," and

27

28                                             5

1    that he had said similar things about his wife and other women. Based on this evidence, a reasonable

2    trier of fact could also conclude Martinez's alleged misconduct was driven by anti-female animus.

3          Martinez further contends, to the extent Rangel intends to claim sexual harassment based on

4    a hostile work environment, summary adjudication of this cause of action must be granted because

5    Martinez's act of exposing his testicles to Rangel was an isolated incident hardly severe or pervasive

6    enough to alter the conditions of Rangel's employment.  "In light of the[ ] similarities [between

7    FEHA and Title VII], California courts frequently seek guidance from Title VII decisions when

8    interpreting [ ] FEHA and its prohibitions against sexual harassment." *Lyle, supra,* 38 Cal.4th at

9    278.  FEHA provides in pertinent part that it is an unlawful employment practice "[f]or an employer,

10   labor organization . . . or any other person, because of . . . sex . . . to harass an employee," Cal. Gov.

11   Code, § 12940, subd. (j)(1); "[a]n employee of an entity subject to this subdivision," like Martinez

12   vis-a-vis AMR, "is personally liable for any harassment prohibited by this section that is perpetrated

13   by the employee[.]" *Id.*, § 12940, subd. (j)(3).  Title VII similarly provides "[i]t shall be an unlawful

14   employment practice for an employer-- [¶] (1) to . . . discriminate against any individual with respect

15   to his compensation, terms, conditions, or privileges of employment, because of such individual's

16   . . . sex," 42 U.S.C. § 2000e-2(a), and "discrimination on the basis of sex . . . includes sexual

17   harassment in the form of a hostile work environment." *E.E.O.C. v. Prospect Airport Services, Inc.,*

18   621 F.3d 991, 997 (9th Cir. 2010).  "A plaintiff may establish a sex hostile work environment claim

19   by showing that he was subjected to verbal or physical harassment that was sexual in nature, that the

20   harassment was unwelcome and that the harassment was sufficiently severe or pervasive to alter the

21   conditions of the plaintiff's employment and create an abusive work environment." *Dawson v. Entek*

22   *Intern.,* 630 F.3d 928, 937-38 (9th Cir. 2011).  Having reviewed the pleadings and all competent and

23   admissible evidence submitted, the Court finds, contrary to Martinez's contention, a reasonable trier

24   of fact could find the alleged misconduct was severe enough to have created an abusive environment.

25         "To determine whether conduct was sufficiently severe or pervasive to [alter the conditions

26   of the plaintiff's employment and create an abusive environment], [courts] look at 'all the

27

28                                                      6

circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Vasquez v. County of Los Angeles,* 349 F.3d 634 (9th Cir. 2003) (quoting *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 270-71, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)).  "The 'severe or pervasive' element has both objective and subjective components." *Prospect Airport Services, Inc., supra,* 621 F.3d at 999 (citing *Brooks v. City of San Mateo,* 229 F.3d 917, 924 (9th Cir. 2000)).  "A plaintiff must establish that the conduct at issue was both objectively and subjectively offensive: he must show that a reasonable person would find the work environment to be 'hostile or abusive,' and that he in fact did perceive it to be so." *Dawson,* 630 F.3d at 938 (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). "There is a subjective requirement as well as an objective requirement, because 'if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment.' " *Prospect Airport Services, Inc.,* at p. 999 (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

At her deposition Rangel testified the following exchange occurred moments before Martinez exposed his testicles to her.  As she was walking to her ambulance, Rangel jokingly told Martinez to not dirty the Porterville station because she had just finished cleaning it.  In response, Martinez told Rangel she couldn't come to the station and tell people what to do just because she wore the pants at home.  Martinez further told Rangel, "Remember you have a write-up, so you better watch out."  According to Rangel, Martinez pulled out a knife, opened it and said something to the effect of "I can cut you right now" or "I can slice you right now."  Rangel told Martinez he "didn't have any balls because no one drops out of the [California Highway Patrol] in less than a week."  Martinez then said something to Rangel along the lines of "I'll show you I have balls," unzipped his pants, put his hands down his pants, pulled out his testicles and said, "[A]nd look, they're even shaven, too." Objectively, Martinez's acts of threatening to physically assault Rangel coupled with his exposing himself to Rangel are themselves sufficiently serious to constitute severe conduct for the purpose

of FEHA.  Rangel also testified she felt "degraded," "assaulted," "paralyzed" and "extremely stressed" as a result, and thus subjectively perceived Martinez's actions to be hostile and abusive.

In arguing that his alleged misconduct could not have been severe enough to alter the conditions of Rangel's employment because it was simply an isolated incident, Martinez essentially contends isolated incidents can never underlie a sex hostile work environment claim.  Martinez has provided no authority – and the Court's research reveals no authority – to support this proposition. Isolated incidents, if extremely serious, may amount to discriminatory changes in the terms and conditions of employment.  *See Faragher, supra,* 524 U.S. at 788; *see also Worth v. Tyler,* 276 F.3d 249, 268 (7th Cir. 2001) ("There is no minimum number of incidents required to establish a hostile work environment . . . . Indeed, we have often recognized that even one act of harassment will suffice if it is egregious"); *Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062, 1072 (10th Cir. 1998) (single instance of physically threatening and humiliating behavior that unreasonably interfered with plaintiff's ability to perform her job duties severe enough to create actionable hostile work environment); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2d Cir. 1995) (abrogated on other grounds by *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)) ("[E]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability").

In the Court's view, this is such a case.  The evidence leaves open the possibility the alleged misconduct may have been more than just innocuous behavior toward a coworker.  The evidence shows this may have been a case of lewd and obscene conduct by a male superior toward a female subordinate that could conceivably have constituted the crime of indecent exposure under California law.  *See* Cal. Pen. Code, § 314 ("Every person who willfully and lewdly . . . [¶] [ ] [e]xposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby . . . [¶] . . . is guilty of a misdemeanor").  Accordingly, even though it appears Martinez threatened and exposed himself to Rangel once, that behavior can fairly be characterized as severe and objectively offensive.  In any case, Rangel does not rely solely

upon the exposure incident to support her FEHA claim.  As the Court has already noted, the evidence suggests Martinez had harassed Rangel on previous occasions, including spanking her and fondling her hair. Based on the foregoing, summary adjudication of the FEHA cause of action must be denied.

**B. Third cause of action (defamation)** – Martinez further moves for summary adjudication of Rangel's claim for slander per se, contending the evidence shows he did not make slanderous statements about Rangel. "The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' [Citations.]" *Taus v. Loftus,* 40 Cal.4th 683, 720, 54 Cal.Rptr.3d 775, 151 P.3d 1185 (2007).  "A false and unprivileged *oral* communication attributing to a person specific misdeeds or certain unfavorable characteristics or qualities, or uttering certain other derogatory statements regarding a person, constitutes slander." *Shively v. Bozanich,* 31 Cal.4th 1230, 1242, 7 Cal.Rptr.3d 576, 80 P.3d 676 (2003) (italics original).  In addition to false statements causing damage, the Legislature has specified slander includes a false statement that "1. Charges any person with a crime, or with having been indicted, convicted, or punished for crime; [¶] 2. Imputes in him the present existence of an infectious, contagious, or loathsome disease; [¶] 3. Tends to directly injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; [¶] 4. Imputes to him impotence or a want of chastity . . . ." Cal. Civ. Code, § 46, subds. 1-4.

Under this cause of action, Rangel alleges: "Defendants, AMR, Martinez and Fisher [sic], through its [sic] agent, AMR, and through its directors officers, partners, agents, owners, employees and alter-egos, acting within the course and scope of their agency or employment, at least in part, caused be published, false and unprivileged communications tending to directly injure Plaintiff in her business and professional reputation.  Specifically, Defendants, and each of them, told others, including subsequent potential employers, expressly or by implication, that Plaintiff was a

problematic, incompetent, insubordinate and untrustworthy employee.  In fact, Plaintiff, was at all times material herein, a competent, loyal, and trustworthy employee. [¶] The defamatory publications consisted of oral and possibly written, knowingly false and unprivileged communications, tending to directly injure Plaintiff and Plaintiff's personal, business and professional reputation.  These publications included the [ ] false and defamatory statements . . . that Plaintiff was mentally unstable, that her interactions with co-workers were 'abrasive,' that her relationships with peers and subordinates were 'severely impaired,' she had violated the employee's sex harassment policy and that she was a poor employee and that she deserved to be terminated.  These and similar statements published by Defendants, and each of them, expressly and impliedly asserted that Plaintiff was unstable and that she was incompetent and a poor employee."  Martinez now contends as to him, no genuine issues of material fact exist for any of the foregoing allegations.  Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court is in agreement. Notwithstanding the fact the defamation claim does not appear to be asserted against Martinez, Rangel simply contends a genuine issue of material fact exists whether Martinez defamed her when he told other AMR employees variously she was a bitch, whore, worthless, not a good employee and did not deserve to be working as an EMT. In the Court's view, these words, alone, are not actionable.

"For nearly 100 years, courts that have addressed the issue of whether the term 'bitch' is actionable are in nearly universal agreement that it is not."  *Culverhouse v. Cooke Center for Learning and Development, Inc.,* 177 Misc.2d 365, 370, 675 N.Y.S.2d 776 (N.Y.Sup. 1998) (and authorities cited therein).  "The term 'bitch' is undoubtedly disparaging.  But to hold that calling someone a 'bitch' is actionable would require [courts] to imbue the term with a meaning it does not have.  Such a holding would, in effect, say that some objective facts exist to justify characterizing someone as a bitch . . . . 'Bitch' in its common everyday use is vulgar but non-actionable name-calling that is incapable of objective truth or falsity.  A reasonable listener hearing the word 'bitch' would interpret the term to indicate merely that the speaker disliked [the target] and is otherwise inarticulate . . . . Although [this] manner of expression [is] very offensive, our slander laws do not

1    redress offensive ideas." *Ward v. Zelikovsky*, 136 N.J. 516, 537, 643 A.2d 972 (1994).  The Court

2    finds the foregoing reasoning to be persuasive and concludes the term "bitch" is not slanderous per

3    se, but merely a crude and vulgar expression that does not have a natural tendency to injure and

4    therefore cannot underlie a slander claim absent special damages.  Notwithstanding the fact the

5    record sheds no light about the circumstances in which Martinez allegedly used the word "bitch" to

6    refer to Rangel, Rangel provides no evidence she suffered damage, actual or otherwise, as a result.

7          As to the word "whore," which Rangel contends implies a want of chastity and is therefore

8    slanderous per se under California Civil Code section 46(4), " '[t]wo strong objections' have been

9    lodged against its inclusion in modern definitions of slander per se. [Citation.] One of these – that

10   it unjustifiably discriminates between men and women – does not apply to California's [slander]

11   statute. [Citation.] The other, however, applies with full force: '[M]any forms of sexual activity once

12   regarded as particularly egregious are today thought of in many quarters as not justifying special

13   legal condemnation.' [Citation.] More precisely, the 'want of chastity' which may once have

14   produced widespread opprobrium is now much less likely to do so in many if not most segments of

15   society." *Gonzalez v. Tan Lines,* 2007 WL 3044333 (Cal.App. 6 Dist. 2007) (unpublished), at *10.[1]

16   The Court finds the foregoing reasoning to be persuasive and concludes "whore," like "bitch," is not

17   slanderous per se, but merely a crude and vulgar expression with no natural tendency to injure and

18   therefore cannot underlie a slander claim absent special damages.  Notwithstanding the fact the

19   record sheds no light about the circumstances in which Martinez allegedly used the word "whore"

20   to refer to Rangel, Rangel provides no evidence she suffered damage, actual or otherwise, as a result.

21         *Tanya G. v. Adriana's Ins. Services, Inc.,* 2005 WL 2100276 (Cal.App. 2 Dist. 2005)

22   (unpublished), does not persuade the Court differently.  Adriana Fregoso, the owner of Adriana's

23   Insurance Services (AIS), hired Tanya Garcia to work for AIS in 1999.  *Id*. at *1.  According to

24   Garcia, Fregoso's husband Leon made unwanted advances to her during her employment.  In 2003

25

26         [4] The Court may cite unpublished California appellate decisions as persuasive authority. *See*

27   *Employers Ins. of Wausau v. Granite State Ins. Co.,* 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003).

28                                              11

Fregoso visited Garcia at the office and, in front of her coworkers Mr. Quetcall (first name unknown) and Erika Anaya, called her a slut and a whore and said she knew Garcia was sleeping with Leon. Fregoso added Garcia need not deny it because Leon had confirmed it and she also knew Leon had offered Garcia money to sleep with him. Fregoso then fired Garcia. *Id*. Garcia brought an action against Fregoso and AIS for slander. The trial court granted Fregoso's motion for nonsuit at the conclusion of her testimony, finding in part "there's insufficient evidence that the two people who heard [Fregoso's] statement reasonably understood the statements to mean that the plaintiff was a whore or a slut or a puta. [¶] They reasonably understood the statements to mean that Mrs. Fregoso was really, really mad, and that doesn't amount to slander." The Court of Appeal reversed. *Id*. at *2.

In his concurring opinion, which constituted the bulk of the decision, Justice Richard Mosk began by discussing the phrase "[i]mputes . . . a want of chastity" in California's slander per se statute, Cal. Civ. Code, § 46(4): " 'The traditional common law position is that the imputation of unchastity in a woman is slander per se and is actionable without proof of special damages.' [Citation.] Although this rule about the imputation of unchastity has been questioned [citation], the rule remains the law of California and elsewhere. [Citations.] The charge that a woman lacks chastity includes such accusations as the woman is a 'whore' or a 'slut.' [Citations.]" *Tanya G., supra,* 2005 WL 2100276, at *3. Observing a slander plaintiff is required to prove that the listener to whom an allegedly defamatory statement was published would have understood it in a defamatory sense *only if* the statement happens to be ambiguous, Justice Mosk concluded the statements at issue were plainly defamatory on their face: "[T]he statements concerning Ms. Garcia – that she was a 'slut' and a 'whore' – are slanderous per se. The meanings of these statements are *unambiguous*. These words, 'construed according to their normal, ordinary meaning, according to the sense in which the recipients would normally interpret them' are defamatory. [Citation.] Certainly most people would view those words as derogatory. [¶] . . . Garcia did not have to establish that the specific listeners understood the statements in the defamatory sense." *Id*. at *4 (emphasis added, footnotes omitted).

Justice Mosk emphasized, however, that an allegedly defamatory statement must nevertheless

12

be evaluated within the context in which it was made to determine whether it could be construed as slanderous per se: "Some language that is seemingly defamatory could be understood as 'hyperbole, or loose figurative expression' and therefore not actionable. [Citations.] . . . '[T]he context in which particular words are used thus is again the key to determining whether they are accusations actionable in libel or slander or merely epithets which, as a matter of law, are not.' [Citations.] [¶] To a large extent, 'the deciding inquiry may well be into what the author of the words intended them to mean.' [Citation.]" *Tanya G., supra,* 2005 WL 2100276, at * 4-*5.  Noting Fregoso had testified (1) she believed a "slut" was a "person that goes out with men for money or just a person who likes to be touched and seen and has no morals" and a "whore" was a "person who gives sexual favors in exchange of money," and that (2) she knew Garcia to be a slut and a whore based on rumors and personal experiences she had had with her, *id*. at *2, Justice Mosk concluded: "[Fregoso] intended the statements to mean just what they infer.  And, there is no evidence suggesting that Ms. Fregoso's statements could be understood in any way other than that Ms. Garcia was at best unchaste and at worst, engaging in sex for consideration.  Ms. Fregoso amplified and reinforced these statements in her comments that Ms. Garcia had been sleeping with [Leon] and that he had offered money to Ms. Garcia to sleep with him.  The words have a 'plain and natural meaning as persons of ordinary intelligence would understand,' which is a test that '[b]oth judges and juries are to go by.'" *Id*. at *5.

    While the term "whore" may impute a want of chastity and thereby constitute defamation in certain contexts, in other contexts the term may be nothing more than "the kind of rhetorical hyperbole, epithets and figurative statements that are nonactionable."  *Ruiz v. Harbor View Community Association,* 134 Cal.App.4th 1456, 1472, 37 Cal.Rptr.3d 133 (2005).  Even assuming the Court were to agree Martinez's alleged statement calling Rangel a whore could conceivably amount to slander per se, the context in which it was spoken must at least suggest it could be perceived not as rhetorical hyperbole but as charging Rangel with a want of chastity.  The evidence here provides *no* context for Martinez's statement.  Under these circumstances, no reasonable trier of fact find the statement reasonably susceptible of a defamatory meaning and/or slanderous per se.

1    The Court further finds Martinez's alleged statements Rangel was worthless, not a good

2    employee and did not deserve to be working as an EMT constitute non-actionable opinion.  " 'The

3    sine qua non of recovery for defamation . . . is the existence of a falsehood.' [Citation.] Because the

4    statement must contain a provable falsehood, courts distinguish between statements of fact and

5    statements of opinion for purposes of defamation liability.  Although statements of fact may be

6    actionable as [defamation], statements of opinion are constitutionally protected. [Citation.]"

7    *McGarry v. University of San Diego,* 154 Cal.App.4th 97, 112, 64 Cal.Rptr.3d 467 (2007).   In

8    determining whether a statement is fact or opinion, the critical question is " 'whether a reasonable

9    fact finder could conclude the published statement declares or implies a provably false assertion of

10   fact.' " *Id*. at 113 (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18-19, 110 S.Ct. 2695, 111

11   L.Ed.2d 1 (1990)).  "[I]t is entirely appropriate for the court to determine in the first instance

12   'whether the publication could reasonably have been understood to have a [defamatory] meaning.'

13   [Citations.]" *Jensen v. Hewlett-Packard Co.,* 14 Cal.App.4th 958, 969, 18 Cal.Rptr.2d 83 (1993).

14        To determine whether a statement constitutes actionable fact or non-actionable opinion,

15   courts employ a totality of the circumstances test.  "Under the totality of the circumstances test,

16   '[f]irst, the language of the statement is examined.  For words to be defamatory, they must be

17   understood in a defamatory sense . . . . [¶] Next, the context in which the statement was made must

18   be considered.' " *McGarry, supra,* 154 Cal.App.4th at 113 (quoting *Baker v. Los Angeles Herald

19   Examiner,* 42 Cal.3d 254, 260-61, 228 Cal.Rptr. 206, 721 P.2d 87 (1986)).  In doing so, courts "

20   'must "look at the nature and full content of the communication and to the knowledge and

21   understanding of the audience to whom the publication was directed." [Citation.]' " *Campanelli v.

22   Regents of University of California,* 44 Cal.App.4th 572, 578, 51 Cal.Rptr.2d 891 (1996) (quoting

23   *Hoffman Co v. E.I. Du Pont de Nemours & Co,* 202 Cal.App.3d 390, 398, 248 Cal.Rptr. 384 (1988)).

24        Having applied the totality of the circumstances test, the Court finds no basis for a reasonable

25   trier of fact to conclude Martinez's alleged statements were anything other than non-actionable

26   opinion.  Nothing in the evidence reveals the nature and content of the communication in which the

27

28                                          14

statements were made or the knowledge and understanding of Martinez's alleged audience.  Without

such context it is essentially impossible to find the statements implied a provably false assertion of

fact.  In her opposition, Rangel suggests the statements she was worthless, not a good employee and

did not deserve to be working as an EMT tended to directly injure her in respect to her profession

by imputing to her a general disqualification in that respect and thereby constituted slander per se

under California Civil Code section 46(3).  This claim fails for the same reason it fails when

predicated on the statements Rangel was a bitch and a whore – namely, no evidence has been

provided to the Court establishing the context in which Martinez allegedly uttered the statements.

Accordingly, there are no triable issues whether Martinez defamed Rangel.  Therefore, summary

adjudication of Rangel's third cause of action for defamation must be granted in favor of Martinez.


***C. Fifth cause of action (sexual battery in violation of California Civil Code § 1708.5)*** – Lastly,

Martinez moves for summary adjudication of Rangel's fifth cause of action for sexual battery in

violation of California Civil Code section 1708.5.  That statute provides in pertinent part as follows:

> "(a) A person commits a sexual battery who does any of the following: [¶] (1) Acts
> with the intent to cause a harmful or offensive contact with an intimate part of
> another, and a sexually offensive contact with that person directly or indirectly
> results. [¶] (2) Acts with the intent to cause a harmful or offensive contact with
> another by use of his or her intimate part, and a sexually offensive contact with that
> person directly or indirectly results. [¶] (3) Acts to cause an imminent apprehension
> of the conduct described in paragraph (1) or (2), and a sexually offensive contact with
> that person directly or indirectly results."

Cal. Civ. Code, § 1708.5.  Under this cause of action, Rangel alleges, "Defendant, Martinez, an agent

of Defendant, AMR, repeatedly and wantonly intended to cause harmful and offensive contact with

various parts of Plaintiff's body. [¶] . . . Defendant, AMR, knew and/or should have known of

Martinez's history and propensities to prey upon female co-workers, and failed to act even after

Plaintiff notified AMR of Martinez's wrongful conduct."  Martinez contends summary adjudication

must be granted because Rangel admitted Martinez did not touch her during the August 10, 2008

altercation.  In her opposition, Rangel now concedes Martinez never made direct or indirect contact

with her when he exposed his testicles and therefore no sexual battery occurred.  Accordingly,

summary adjudication of the fifth cause of action for sexual battery must be granted for Martinez.

## V. DISPOSITION

Based on the foregoing, Martinez's motion for summary judgment is DENIED.

Martinez's motion for partial summary judgment (i.e., summary adjudication) in the alternative is granted in part and denied in part.  Summary adjudication is GRANTED in favor of Martinez as to the third and fifth causes of action for defamation and sexual battery, respectively.  Summary adjudication of any and all other causes of action asserted against Martinez is DENIED.

The Court hereby refers the case to the Magistrate Judge for a trial-setting conference.

IT IS SO ORDERED.

Dated:   April 25, 2013

_____
                        SENIOR  DISTRICT  JUDGE

16